WILLIAMS, J.
The plaintiff, Foy Madison Hunter, appeals a trial court judgment, rejecting his claim for an accounting by the community and reimbursement of educational expenses incurred on behalf of the defendant, Christine Marie Thielen Hunter. For the following reasons, we affirm.
FACTS
The parties were married on June 16, 1979. They established their marital domicile in Shreveport, and three sons were born of the marriage. Mrs. Hunter began attending college in June, 1990 and graduated in August, 1994 with a Bachelor of Science in Nursing. During the time that she was attending school, Mr. Hunter, an accountant, paid all of Mrs. Hunter’s educational expenses except tuition, which was paid with student loans. When Mrs. Hunter graduated, she was employed as a registered nurse. She immediately began depositing her entire payroll check into the couple’s joint account.
Mr. and Mrs. Hunter physically separated on September 1,1997. They obtained a divorce on May 27, 1998. The parties executed a “Partition of Community Property Agreement” on November 20, 1997. Their agreement specified that the balance of the proceeds from the sale of the marital home would be equally divided between them. Paragraph 8 of the agreement provides in part:
8.
FOY MADISON HUNTER transfers with full guarantee of title and with complete transfer and subrogation of rights of warranty against all former owners of property herein conveyed, unto CHRISTINE MARIE THIELEN HUNTER [,] who appears herein to accept and acknowledge delivery of the following described property:
li>(D) All equity in the family home located at 6755 North Club Circle, Shreveport, Louisiana 71107, reduced by chil-drens’ fund to children, net difference in both parties savings plan to CHRISTINE MARIE THIELEN HUNTER to make plans excluding “retirement” equal, balance divided equally between the parties after the sale of said property and the payment of the following:
1) Fleet Mortgage Company having account # 55504614.
The agreement discharged each party from any further accounting' by the other as it relates to the partition. Paragraphs 17 and 18 of the agreement provide:
17.
The parties hereto declare that, after taking into consideration the assumption of all community debt, the properties allotted to each approximately equal in value, and they do relieve and release each other from any further accounting, expressly stating that both are satisfied with this voluntary partition.
18.
The parties hereto discharge each other from any further accounting for their separate and paraphernal fund, the community of acquets and gains being fully partitioned as set forth above; they are satisfied with the reference to all reservation and restoration of each party’s separate and paraphernal property; they have agreed and do affirm that each has received full value for his or her entire interest in and to the community of acquets and gains and for reim *1108 bursement to their respective separate estates.
The property was sold on December 15, 1997. According to their deposition testimony, at the time of the sale, the parties divided the funds from the proceeds of the sale using calculations based partially on exact dollar amounts and partially on estimated dollar amounts in an attempt to give some funds to each party as soon as possible. According to Mr. Hunter, exact dollar amounts later became available to replace the estimated figures used. Based on his recalculations, Mr. Hunter claims that he is owed $6,943.50.
|sOn January 22, 1999, approximately one year after the sale of the property, Mr. Hunter filed this request for an accounting against Mrs. Hunter. He also sought reimbursement for payment of educational expenses on behalf of Mrs. Hunter during the time that she was attending nursing school. The trial court rejected Mr. Hunter’s demands. Mr. Hunter appeals.
DISCUSSION
Mr. Hunter contends the trial court erred in rejecting his demand for an accounting. He claims that his request for an accounting should have been granted because he received less from the proceeds of the sale of the community home than he should have received. Mr. Hunter contends both actual and estimated figures were used in order to expeditiously deliver money to each party.
The Hunters’ written agreement specifically states that there would be no further demand for an accounting by either party. In paragraph 5 of the agreement, the parties stipulated:
Certain property was acquired during their marriage and the parties hereto desire to settle and liquidate the property that is presently owned in community and have agreed to do so as set forth in this agreement. The parties declare themselves satisfied with the accounting that has been made between the parties and waive any right to a further accounting from either property owned in community or the parties respective separate estates. (Emphasis added).
It is clear from the record that the contract was voluntarily executed by both parties. Mr. Hunter does not argue that he was under duress or undue influence at the time the document was executed. The agreement between the parties is sound and legally binding. Mr. Hunter specifically |4agreed that he was satisfied with the settlement and waived any right to demand a further accounting.
After reviewing the parties’ deposition testimony, the trial court found that both parties were present at the sale of the community home. The trial court also found that on the date of the closing, Mr. Hunter actually made the written calculations with regard to the proceeds from the sale of the home and determined the approximate sum he was to receive from the proceeds of the sale. We agree with the trial court’s findings, and conclude that Mr. Hunter, an accountant for 28 years, should have been aware of the balances to be deducted from the purchase price at the time of the sale. Consequently, we do not find any reason, either in law or equity, to disturb the parties’ agreement or subsequent distribution of the proceeds. Accordingly, the trial court was correct in rejecting Mr. Hunter’s demand for an accounting by the former community.
Mr. Hunter also contends he is entitled to reimbursement of financial contributions to Mrs. Hunter’s education. He asserts that he was the sole source of support for his family during the 51 months that Mrs. Hunter was attending school. He argues *1109 that the trial court should have awarded him the amount of $12,875, which represents one-half of Mrs. Hunter’s educational expenses.
LSA-C.C. art. 121 authorizes a claim for reimbursement of educational expenses and reads as follows:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse’s earning |Rpower, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property.
In Barrow v. Barrow, 27,714 (La.App.2d Cir.2/28/96), 669 So.2d 622, writ denied, 96-1057 (La.6/21/96), 675 So.2d 1080, this court held that under LSA C.C. art. 121, it is within the trial court’s discretion to make an award for educational contributions. The court, quoting Spaht, Developments in the Law, 1985-86: Persons and Matrimonial Regimes, 47 La. L.Rev. 391, 393 (1986), stated:
Under C.C. art. 121, the court may award a party a sum for financial contributions made during the marriage to education or training of the other spouse that increased the spouse’s earning power, to the extent the claimant did not benefit from the increased earning power during the marriage. This award is discretionary. Factors to consider include (1) the claimant’s expectation of shared benefit when the contributions were made, (2) the degree of detriment suffered by the claimant in making the contributions, and (3) the magnitude of the benefit the other spouse received.
In the present case, the trial court found that Mrs. Hunter began working as a registered nurse immediately after nursing school and deposited her “full payroll check into the [parties’] joint checking account.” The court also noted that the increased household income benefitted the community for three years. The court concluded that Mr. Hunter benefitted from the increased income during the marriage by an improved standard of firing and an accumulation of community property.
The record supports the trial court’s findings. Mrs. Hunter earned approximately $80,000 during the three-year period between Mrs. Hunter’s graduation and the parties’ physical separation. All of Mrs. Hunter’s earnings were deposited into the parties’ joint account. Moreover, Mrs. IfrHunter’s student loan, more than half of the educational expense, was paid within two years after she began working. Under the facts and circumstances of this case, we find no abuse of the trial court’s discretion in its denial of Mr. Hunter’s claim for reimbursement of educational expenses.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed to the plaintiff, Foy Madison Hunter.
AFFIRMED.